IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

vs. Case No. 3:10cv454/RS/CJK

MARK DANIEL LEITNER, et al.,
Defendants.

---

REPORT AND RECOMMENDATION

Before the court is plaintiff's Motion to Reinstate Default and Application for Default Judgment Against Defendant Mark Daniel Leitner. (Doc. 61). Defendant Leitner has responded by filing a document titled "Notice and Petition in the Nature of a Motion, and Objection." (Doc. 71). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E). Having fully considered the parties' submissions, the record and relevant case law, the undersigned recommends that plaintiff's motion be granted.

BACKGROUND AND PROCEDURAL HISTORY

A detailed background and procedural history of this case dating back to its inception are outlined in the court's March 29, 2011 order (doc. 49). The material procedural facts, as demonstrated by the record, are these. On November 4, 2010, the

United States brought this suit on behalf of seven federal officers and employees ("Federal Officers"), claiming that defendant Leitner filed false UCC financing statements and liens against the Federal Officers in retaliation for their participation in Leitner's criminal prosecution for tax and mail fraud. Personal service of the summons and complaint was made upon Leitner on December 16, 2010, while Leitner was incarcerated at FTC Oklahoma City, a Federal Transfer Center located in Oklahoma City, Oklahoma. (Doc. 10). Leitner was required to serve a responsive pleading by January 6, 2011. Fed. R. Civ. P. 12(a)(1)(A)(i). A few days after service, Leitner was transferred to another federal penal institution and was without his legal property until the first week of January. (Doc. 34, p. 2¶ 3)

When Leitner failed to plead or otherwise defend by January 26, 2011, the United States moved for entry of a Clerk's default. (Doc. 15). The Clerk entered a default on January 28, 2011. (Doc. 17). Leitner then submitted a flurry of documents, none of which complied with the court's procedural rules, and most of which made no sense in the context of this case. To create a record of the types of papers Leitner was attempting to file, the Court allowed a few to be filed despite their non-compliance. Others were returned without filing. On February 28, 2011, the Court docketed Leitner's "Common Law Petition in the Nature of a Motion for Enlargement of Time." (Doc. 34). Defendant Leitner sought, in part, to set aside the default, arguing that it was "impossible" for him to timely respond to the complaint due to his prison transfer just "a few days" after service. He asserted he did not have access to the complaint until "mid-first week of January." (Doc. 34, p. 2¶ 3). Leitner sought an extension of time until May 15, 2011 in which to answer the complaint. The United States opposed the relief. (Doc. 44).

On March 29, 2011, the Court set aside the default, finding that Leitner had not willfully or culpably ignored the summons (at least not at the time the default was entered), and that the United States would not be prejudiced by setting aside the default. (Doc. 49). The court provided Leitner twenty-one days (until April 19, 2011) in which to file a response to the complaint, warning that, "Should Mr. Leitner choose to persist in the bizarre filings at which he has already shown himself adept, rather than taking this opportunity to file an appropriate responsive pleading, or should he otherwise fail to timely comply with this order as instructed, the court will not hesitate to impose sanctions." (*Id*., pp. 5-6). One of the discussed sanctions was reinstatement of the default. (*Id*., p. 5).

In response, Leitner filed a document titled "Emergency Petition for Enlargement of Time Due to Extenuating Circumstances, Notice to Court, Preliminary Objections." (Doc. 60). Leitner sought an extension of time until May 28, 2011, arguing that his legal materials were confiscated on April 8, 2011 due to an impending relocation and that he would not have access to them until he arrived at his new institution. (Doc. 60). In his "Preliminary Objections," plaintiff contended that because he had filed maritime liens and UCC financing statements against this Court itself and certain of its officers and employees, this Court is a debtor to Leitner and must dismiss or consolidate this case with a similar one pending against Leitner in the United States District Court for the Western District of New York. (*Id*., pp. 9-14 in ECF).

In an order dated April 21, 2011, the Court noted that plaintiff had had access to his legal property for at least three months before the Court imposed the April 19, 2011 deadline and before his materials were confiscated. Nonetheless, plaintiff was

granted a brief extension, until May 6, 2011, in which to respond to the complaint. (Doc. 62).

In the meantime, on April 20, 2011, the United States filed the now-pending motion to reinstate the default and for default judgment. (Doc. 61). On May 11, 2011, the Court ordered (1) that the motion be held in abeyance for two weeks, (2) that plaintiff's counsel ensure that all relevant case documents were provided to Leitner at his present place of confinement (plaintiff has been confined at the Santa Rosa County Jail since April 27, 2011, *see* doc. 71, p. 3), and (3) that the motion for default judgment be taken under advisement on May 25, 2011. (Doc. 67).

Leitner acknowledges that on May 18, 2011, he received copies of the following documents: plaintiff's motion for reinstatement of the default and for default judgment (doc. 61), the court's April 21, 2011 order (doc. 62), and the court's May 11, 2011 order (doc. 67). (Doc. 71, p. 5). Instead of filing a pleading responsive to the complaint, plaintiff has filed a document titled "Notice and Petition in the Nature of a Motion, and Objection." (Doc. 71). In this document, Leitner takes issue with the court's April 21, 2011 order, arguing that he was entitled to detailed findings of fact and conclusions of law concerning the "objection" raised in his "Emergency Petition for Enlargement of Time Due to Extenuating Circumstances, Notice to Court, Preliminary Objections," (doc. 60). (Doc. 71, pp. 1-2). Leitner further asserts that the United States has conspired to deprive him of the opportunity to respond to the complaint by filing "false" criminal charges against him (Leitner) in this Court. (Doc. 71, p. 4). Leitner says he requires an indefinite stay of this proceeding, because his legal materials, including his copy of the complaint, drafts and legal research, remain stored at his previous institution in Lewisburg, Pennsylvania; therefore, he is unable

to answer the complaint. Leitner also claims he lacks access to legal resources and research materials. (*Id*., pp. 3-6). As relief, he requests, among other things, that the motion for default judgment be denied and this case stayed indefinitely.

ANALYSIS

Reinstatement of Clerk's Default

"The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court." *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1203 (11th Cir. 1999). The entry of a Clerk's default is authorized if it is shown that a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Entry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b). *See, e.g.*, 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2682 (2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").

Rule 55(b)(1) states that "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," then the clerk of court must enter judgment for that amount, on request of the plaintiff. Fed. R. Civ. P. 55(b)(1). The Rules provides that in all other cases, a party seeking default judgment must apply to the court. Rule 55(b)(2) permits the district court to hold an evidentiary hearing to establish, when necessary, the truth of any allegation by evidence. Fed. R. Civ. P. 55(b)(2). Nevertheless, an "evidentiary hearing is not a *per se* requirement," and is not needed when "all essential evidence is already of record." *SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005).

A defaulted defendant is deemed to "admit[ ] the plaintiff's well-pleaded allegations of fact." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id*. The defendant, even though in default, is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). In deciding whether to grant a default judgment, a court may consider whether: (1) a denial would prejudice the plaintiff; (2) the defendant appeared to have a litigable defense; and (3) the defendant's delay was caused by culpable conduct. *See, e.g., Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3rd Cir. 2000).

Defendant Leitner has failed to answer or otherwise defend this action. His failure stems not from a lack of access to necessary legal materials, but from Leitner's culpable and willful disregard of the judicial process and the rights of the plaintiff. Therefore, as the Court warned Leitner, the Clerk's entry of default will be reinstated. As to entry of a default judgment, Leitner received the requisite seven days' notice of plaintiff's motion for default judgment, which reiterated the detailed factual allegations of the complaint. Leitner was notified that the court could enter a default judgment on May 25, 2011, unless he filed an answer or other responsive pleading permitted under the Federal Rules of Civil Procedure. With full knowledge of what was taking place – possible entry of a final default judgment – Leitner elected to do nothing in the way of addressing the United States' allegations against him. Leitner

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

has neither presented a meritorious defense, contested the allegations to support the judgment being sought, nor shown good reason why the proposed default judgment should not be entered. The plaintiff, including the Federal Officers affected by Leitner's conduct, will be prejudiced by further delay of this proceeding.

Findings of Fact, Conclusions of Law, and Recommended Final Judgment

Plaintiff United States seeks declaratory and injunctive relief under 26 U.S.C. § 7402 and 18 U.S.C. § 1345. (Doc. 1). Subject matter exists under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1340 (providing the district court with "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue"), 28 U.S.C. § 1345 (providing the district court with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States"), and 26 U.S.C. § 7402(a) (authorizing the district court to "render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."). Defendant Leitner has not raised the issue of personal jurisdiction in a proper Rule 12(b) motion; therefore, the issue is waived. *See* Fed. R. Civ. P. 12(b). Even absent waiver, Mr. Leitner is subject to personal jurisdiction here, because a substantial part of the events giving rise to the plaintiff's claim occurred in this district. Venue is proper in the Northern District of Florida as all of the fraudulent liens were executed and notarized in Escambia County, Florida, which is within the territorial jurisdiction of this Court. In addition, the UCC Financing Statements filed against Ms. Eggers, Mr. Kirwin and Mr. McCool were made in Tallahassee, Florida, which is within the territorial jurisdiction of this Court. 28 U.S.C. § 1391(b).

The undisputed factual showings presented against defendant Leitner in the complaint and exhibits (docs. 1, 5, 7), as reiterated in plaintiff's motion for default judgment (doc. 61), establish that defendant Leitner is a federal prisoner serving a sentence imposed by a judge of this Court on July 29, 2010, upon Leitner's conviction of Conspiracy to Defraud the United States (the Internal Revenue Service) and Commit Wire Fraud. (Doc. 1, p. 2 ¶ 5; Doc. 61, pp. 3-4; *see also United States of America v. Mark Daniel Leitner*, Case No. 3:08cr79/MCR, docs. 1166, 1319). The United States proved at Leitner's criminal trial that Leitner promoted Pinnacle Quest International (PQI), an umbrella organization for various vendors in a multi-level marketing scheme, the most prominent of which were fraudulent tax evasion and debt elimination schemes. Most of the PQI members and vendors, including Leitner, were tax defiers who claimed to be immune from federal tax laws. (Doc. 1, p. 6 ¶ 20; Doc. 61, p. 3).

Defendant FloridaUCC is a private entity that, under a contract with the State of Florida, maintains the Florida Secured Transaction Registry (the "Florida Registry") which records Uniform Commercial Code filings in Florida. The Florida Registry provides the public with notice of consensual liens given by debtors to creditors. (Doc. 1, p. 2 ¶ 6).

In March of 2010, while Leitner was in Pensacola, Florida, for his criminal trial (a jury trial lasting twenty days from March 1-31, 2010), Leitner executed and caused to be notarized a "Notice of Claim of Maritime Lien" against the "vessel"[2] Jarod

[2]A human body has, in the theological sense, been referred to as a "vessel." *Eg. Acts 9:15, 1 Cor 3:16*. Nothing in the context of Leitner's actions suggests he intended a religious analogy.

Koopman, a New York resident and Special Agent with the Criminal Investigation Division of the Internal Revenue Service ("IRS") who led the investigation resulting in Leitner's prosecution and conviction. (Doc. 1, p. 6 ¶ 22 and p. 10 ¶ 35; Doc. 5, Ex. A; Doc. 61, pp. 4, 5). In the "Notice of Claim of Maritime Lien" Leitner stated, under oath, that Mr. Koopman owed Leitner $48,489,000,000, plus interest, penalties and fees, and that the debt was secured by all of Mr. Koopman's real and personal property. (Doc. 1, p. 10 ¶ 35; Doc. 5, Ex. A; Doc. 61, p. 5). Leitner's signature on the "Notice of Claim of Maritime Lien" was notarized on March 23, 2010 in Escambia County, Florida. (Doc. 5, Ex. A, p. 2). As evidence of Leitner's purported secured interest, he identified a document he had submitted for filing in his criminal case – an "Affidavit of Specific Negative Averment, Opportunity to Cure, and Counterclaim" – that had been returned to him without filing. (*Id.*; *see also United States of America v. Mark Daniel Leitner*, Case No. 3:08cr79/MCR, doc. 775 (order returning document without filing)).

At the time Leitner executed the "Notice of Claim of Maritime Lien" against Mr. Koopman, he executed six others, one each against the following "vessels":

1. Tiffany Eggers, a Florida resident and an Assistant United States Attorney for the Northern District of Florida who briefly assisted in the prosecution of Leitner. (Doc. 1, p. 6 ¶ 23 and pp. 10-11 ¶¶ 38, 39; Doc. 5, Ex. C; Doc. 61, pp. 4, 6);

2. Thomas Kirwin, a resident of Florida and an Assistant United States Attorney in the Northern District of Florida, was Acting United States Attorney for the Northern District of Florida during Leitner's criminal trial. (Doc. 1, p. 7 ¶ 24, and p. 11 ¶ 40; Doc. 61, pp. 4, 6);

3. Michael Watling, a Washington D.C. resident and Trial Attorney in the Criminal Enforcement Section of the U.S. Department of Justice, Tax Division who assisted in the prosecution of Leitner. (Doc. 1, p. 12 ¶ 41; Doc. 7, Ex. D; Doc. 61, pp. 4, 6);

4. Adam Hulbrig, a Washington D.C. resident and Trial Attorney in the Criminal Enforcement Section of the U.S. Department of Justice, Tax Division who assisted in the prosecution of Leitner. (Doc. 1, p. 12 ¶ 41; Doc. 7, Ex. D; Doc. 61, pp. 4, 6);

5. William McCool, who at the time was a Florida resident who officiated as the Clerk of Court of the United States District Court for the Northern District of Florida during Leitner's criminal trial. (Doc. 1, pp. 7-8 ¶ 28 and p. 13 ¶¶ 44, 45; Doc. 7, Ex. E; Doc. 61, pp. 5, 6-7); and

6. Jonathan Marx, a Virginia resident and Trial Attorney in the Criminal Enforcement Section of the U.S. Department of Justice, Tax Division who served on the Tax Division's trial team during Leitner's criminal trial. (Doc. 1, p. 7-8 ¶ 27 and pp. 13, 14 ¶¶ 46, 48; Doc. 5, Ex. F; Doc. 61, pp. 4, 7).

The Notices of Claim of Maritime Lien were identical to the one against Mr. Koopman, with the exception of the Federal Officer named in the lien. In each "Notice of Claim of Maritime Lien," Leitner stated, under oath, that the particular Federal Officer owed Leitner $48,489,000,000, plus interest, penalties and fees, and that the debt was secured by all of that Federal Officer's real and personal property. (Doc. 1, ¶¶ 23, 38, 39, 41, 44, 48; Doc. 5, Exs. A, C, F; Doc. 7, Exs. D, E; Doc. 61, pp. 4, 6, 7). Leitner caused each "Notice of Claim of Maritime Lien" to be notarized on March 23, 2010 in Escambia County, Florida. (Doc. 1, p. 15 ¶ 50; Doc. 5, Exs. A,

C; Doc. 7, Exs. D, E; Doc. 61, p. 8). In each "Notice of Claim of Maritime Lien," Leitner referenced, as evidence of his purported secured interest, the "Affidavit of Specific Negative Averment, Opportunity to Cure, and Counterclaim." he had attempted to file in his criminal case. (*Id.*).

After preparing the alleged maritime liens, Leitner prepared a UCC Financing Statement against each Federal Officer, claiming himself (Leitner) as the "secured party" and the Federal Officer as the "debtor." (Doc. 1, ¶¶ 35, 38, 41, 44, 46, 48; Doc. 5, Exs. A, C, F; Doc. 7, Exs. D, E; Doc. 61, pp. 5-7). In describing the collateral covered by the Financing Statement, Leitner stated that "[a]ll property belonging to the debtor belongs to the secured party," referencing an attached "Notice of Claim of Maritime Lien." (*Id.*). Attached to each Financing Statement was the "Notice of Claim of Maritime Lien" against that Federal Official. (*Id.*).

On March 25, 2010, while still in Pensacola, Leitner caused the UCC Financing Statement with attached "maritime lien" against Mr. Koopman to be filed with the New York Secretary of State. (Doc. 1,¶ 35; Doc. 5, Ex. A; Doc. 61, p. 5). On June 11, 2010, defendant Leitner filed a UCC Financing Statement Amendment against Koopman, again referencing the "maritime lien." (Doc. 1, ¶ 36; Doc. 5, Ex. B; Doc. 61, p. 5).

On March 25, 2010, Leitner caused the UCC Financing Statement with attached "maritime lien" against Ms. Eggers to be filed in the Florida Registry maintained by defendant FloridaUCC. (Doc. 1, ¶ 38; Doc. 5, Ex. C, p. 1; Doc. 61, p. 6). In that same Financing Statement, Leitner named Thomas Kirwin as an "additional debtor." (Doc. 1, ¶ 38; Doc. 5, Ex. C; Doc. 61, p. 6). Although the "Notice of Claim of Maritime Lien" against Mr. Kirwin is not provided as an exhibit,

the United States asserts, and defendant Leitner does not dispute, that the "maritime lien" was the same as that executed against Ms. Eggers and the other Federal Officers. (Doc. 61, p. 6).

On July 26, 2010, Leitner caused the UCC Financing Statement with attached "maritime lien" against Mr. Watling to be filed in the State of Washington Department of Licensing. (Doc. 1, ¶ 41; Doc. 7, Ex. D; Doc. 61, p. 6). In that same Financing Statement, Leitner named Mr. Hulbrig as an "additional debtor," and attached the "maritime lien" against Mr. Hulbrig. (*Id*.).

On March 31, 2010, Leitner caused the UCC Financing Statement with attached "maritime lien" against Mr. McCool to be filed in the Florida Registry maintained by defendant FloridaUCC. (Doc. 1, ¶ 44; Doc. 7, Ex. E, p. 1; Doc. 61, pp. 6-7). In that same Financing Statement Leitner named "United States District Court Northern District of Florida Pensacola Division" as an "additional debtor." (*Id.*). A copy of the "Notice of Claim of Maritime Lien" against this Court has not been provided.

On March 29, 2010, Leitner caused the UCC Financing Statement with attached "maritime lien" against Mr. Marx to be filed with the Virginia Secretary of State (the Secretary of the Commonwealth/UCC Division). (Doc. 1, ¶¶ 46, 48; Doc. 7, Ex. F, p. 1; Doc. 61, p. 7). On June 10, 2010, defendant Leitner filed a UCC Financing Statement Amendment against Marx, again referencing the "maritime lien." (Doc. 1, ¶ 49; Doc. 5, Ex. G; Doc. 61, p. 7).

On June 3, 2010, defendant Leitner sought to enforce the alleged maritime liens by filing the eight Notices of Claim of Maritime Lien, as well as other documents, in the United States District Court for the Western District of New York. *Leitner v.*

*Lahood*, No. 10-MC-6019-CJS, 2010 WL 2539698 (W.D. N.Y. June 18, 2010); *see also* Case Docket for Western District Case No. 6:10mc06019. The Notices were the same eight notices discussed above, against Koopman, Eggers, Irwin, Watling, Hulbrig, McCool, this Court and Marx, seeking $48,489,000,000 against each "vessel." *Id*. at *1[3]. On June 18, 2010, the district court in New York denied the lien claims with prejudice and directed the clerk of court to close the case without any liens being issued, explaining:

> Petitioner's attempt to place a lien on, among others, the Northern District of Florida court and Internal Revenue Service agent Jarod Koopman, as well as the prosecutors and Clerk in the Northern District of Florida, shows that his applications in total are fantastic, delusional and incredible. Considering that [United States District Judge for the Northern District of Florida] Judge Rodgers has already informed Petitioner that Admiralty law does not apply in the circumstances, that Petitioner has made no showing that the "vessels" he identifies are located within this district, or that he has a valid basis for any liens, let alone liens totaling over forty-eight billion dollars per vessel, Petitioner's lien claims are without merit, and no opportunity to amend his claims is warranted.

*Id.* at *3.

---

[3]The notices provided anthropomorphic labels for the subjects of the "maritime liens":

"U.S. M/V MICHAEL JOHN WATLING; U.S. M/V ADAM REDERICK HULBIG; U.S. M/V JAROD J. KOOPMAN; U.S. M/V THOMAS FRANCIS KIRW IN; U.S. M/V TIFFANY HOPE EGGERS; U.S. M/V U.S. DISTRICT COURT NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION; U.S. M/V WILLIAM M. MCCOOL." *Id.*

At all times material to this suit, each Federal Officer referenced above was acting in his or her official capacity, in the course and scope of his or her employment as an official of the government of the United States of America. (Doc. 1, pp. 1-8 ¶¶ 22-28; Doc. 61, p. 5). The seven Federal Officers were involved only in their official capacities in the criminal investigation and/or prosecution of Leitner for violations of the internal revenue laws. None of the Federal Officers has never entered into any contract with Leitner, and they are not, nor have they ever been, indebted to Leitner, nor have they agreed to, nor authorized Leitner to file any documents purporting to reflect a debt or lien in the public record or in any private registry with public access, including without limitation the "maritime liens" and UCC Financing Statements described above. (Doc. 1, ¶¶ 37, 39, 40, 42, 43, 45, 47; Doc. 61, pp. 7-8).

Defendant Leitner had all the above-described "maritime liens" notarized in Escambia County, Florida, and he mailed them, or caused them to be mailed, utilizing the United States Postal Service to the filing offices shown on the above-described UCC Financing Statements. (Doc. 1, ¶ 50; Doc. 61, p. 8). The plaintiff asserts, and Leitner does not dispute, that Leitner has caused recordings of such UCC financing statements and the above-described claims against the Federal Officers within the past year, demonstrating that his harassment of these officials is ongoing. (Doc. 1, ¶ 53; Doc. 61, p. 9).

Leitner knew the falsity of the information in the "maritime liens," UCC Financing Statements and other documents at the time he prepared and filed them. (Doc. 1, ¶ 60; Doc. 61, p. 11). Leitner filed the false liens and other documents in bad faith and with the purpose of slandering the credit of, harassing, intimidating, punishing, and retaliating against the Federal Officers for enforcing the Federal tax

laws, and to interfere with the prosecution of criminal conduct under those laws. (Doc. 1, ¶¶ 55, 58-59, 62; Doc. 61, p. 9-11).

The sham documents are actually or potentially damaging to the credit ratings of the Federal Officers, having been recorded in the state or local registries for such records, in which the Federal Officers are identified by name and business address as debtors. (Doc. 1, ¶ 64; Doc. 61, p. 11). The effects on one's credit report from such actions may have repercussions not yet felt. It is not difficult, however, to imagine the harmful effects on the employees who have been maligned by the actions of defendant Leitner. Some of these filings included private personal information of the Federal Officers, such as their Social Security Numbers. (*Id.*; *see also* Exhibits attached to Docs. 5, 7). The Social Security Numbers were redacted by such registries after filing; however, this may not have prevented the release of such private information before the redaction occurred. (*Id.*). These registries are also accessible by the public through the internet. (*Id.*).

Section 7402(a) of the Internal Revenue Code permits a court to enjoin a defendant if "necessary and appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). "The language of § 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws," *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984), and, "therefore, it can be used to enjoin interference with tax enforcement "even when such interference does not violate any particular tax statute." *United States v. Kaplowitz*, 201 Fed. Appx. 659, 661 (11th Cir. 2006). A district court may enjoin conduct where (1) a party establishes a violation of the right asserted in his complaint; (2) there is no adequate remedy at law; and (3) he will sufferable irreparable harm if the conduct is not enjoined.

*Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). "Courts have used Section 7402(a) on numerous occasions to grant the exact relief sought here, *i.e.*, to enjoin taxpayers from filing frivolous and unsupported documents against IRS [and other federal] employees acting in accordance with their official duties, and declare such documents null, void, and with no legal effect." *United States v. McGugan*, 600 F. Supp. 2d 608, 611 and n. 3 (D. N.J. 2009) (collecting cases); *Kaplowitz*, 201 Fed. Appx. at 661 (affirming district court's expungement of recorded "judgments" against IRS employees, and court's grant of injunctive relief preventing taxpayer from recording any further sham documents; noting that "several circuits have held § 7402(a) gives the district court authority to declare void and enjoin baseless common law liens or other similar documents recorded in the public records against government employees and officials" (citing cases from the Fifth, Seventh, Eight, Ninth and Tenth Circuits)); *United States v. Barker*, 19 F. Supp. 2d 1380, 1383 (S.D. Ga.1998) ("It is by now established beyond dispute that the United States may request the assistance of Article III courts to protect its officials from attempts at harassment, intimidation, and extortion in the form of 'liens' commonly filed by tax protestors and prisoners."); *see, e.g., United States v. MacElvain*, 68 F.3d 486, 486 (11th Cir. 1995) (unpublished opinion) (summarily affirming district court's declaration, permanent injunction, and expungement of public records regarding "common law liens," "complaints," and "commercial notices" taxpayer filed, because the bogus documents illegally interfered with the administration of the internal revenue laws).

Plaintiff United States has provided sufficient evidence in support of its claims, and is entitled to judgment against defendant Leitner based on the facts established

by the record and the governing law. The rights and liabilities (including security interests) purportedly created by the false "maritime liens," UCC Financing Statements and other documents are patently false, have no basis in fact or law and are thus invalid. These false documents were designed to, and did harass and cause substantial interference with the enforcement of the laws of the United States pertaining to the internal revenue. The public filing of such bogus documents imposes irreparable harm on the federal employees that are the subject of the documents. The harassment of federal employees by a prisoner, simply for performing the duties of that employment cannot be tolerated and should meet, in all cases, with swift justice.

The United States' complaint also sought injunctive relief under 18 U.S.C. § 1345(a)(1), which permits the Government to commence a civil action in federal court to enjoin the current or future commission of fraud against the United States or any agency thereof. 18 U.S.C. § 1345(a)(1). To succeed on this claim, the plaintiff not only must demonstrate its entitlement to injunctive relief, but also must establish that fraud has been committed and demonstrate the extent of such fraud. Because the United States contends defendant Leitner's actions constitute mail fraud under 18 U.S.C. § 1341, it must demonstrate that Leitner devised a scheme or artifice to defraud or to obtain money or property by false or fraudulent pretenses and, with an intent to defraud, knowingly used the Postal Service or other commercial interstate carrier for the purpose of executing or attempting to execute such scheme or artifice. *See* 18 U.S.C. § 1341. Because the nature of the injunctive relief this court would issue under § 1345 is essentially the same as that already being recommended under 26 U.S.C. § 7402(a), the court need not address this issue.

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's Motion to Reinstate Default and Application for Default Judgment Against Defendant Mark Daniel Leitner (doc. 61) be GRANTED.

2. That the Clerk's entry of default against defendant Mark Daniel Leitner be REINSTATED.

3. That the Court DECLARE the Notices of Claim of Maritime Lien, UCC Financing Statements, UCC Financial Statement Addenda and other documents filed by Mark Daniel Leitner against Jarod Koopman, Tiffany Eggers, Thomas Kirwin, Mark Watling, Adam Hulbrig, William McCool, Jonathan Marx and the United States District Court for the Northern District of Florida false, fraudulent, null and void, and of no legal force or effect.

4. That the Court ISSUE the following permanent injunction:

a. Mark Daniel Leitner is enjoined from filing, or causing to be filed, any financing statement or claim of lien of any kind against any federal employee unless Mr. Leitner has had commercial dealings with the person and the person has signed a contract, note, security agreement, or other document explicitly authorizing the filing.

5. That Mark Daniel Leitner be required to disclose to counsel for the plaintiff all actions similar to the filings described herein, within thirty days of entry of judgment.

6. That judgment be entered against defendant Mark Daniel Leitner accordingly.

7. That this matter be referred to the undersigned for further proceedings on plaintiff's claims against defendant FloridaUCC, Inc., including the issuance of an initial scheduling order.

At Pensacola, Florida this 6th day of June, 2011.

/s/ Charles J. Kahn, Jr.

CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).